# In the United States District Court
## for the District of Kansas

———————

Case No. 21-cv-02573-TC-GEB

———————

PAULA GULICK,

*Plaintiff*

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,

*Defendant*

———————

## MEMORANDUM AND ORDER

Plaintiff Paula Gulick filed this suit as a putative class action on behalf of herself and other customers alleging breach of contract and seeking a declaratory judgment against Defendant State Farm Mutual Automobile Insurance Company. Doc. 3. State Farm moves to dismiss for failure to state a claim. Doc. 16. For the following reasons, State Farm's motion to dismiss is denied.

## I

### A

To survive a motion to dismiss for failure to state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements of the cause of action. *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to the claimant must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claims define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

In the alternative to a Rule 12(b)(6) challenge, a party may request a more definite statement under Rule 12(e). 5C Wright & Miller, *Federal Practice and Procedure* § 1376 (3d ed. 2023). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The movant "must point out the defects complained of and the details desired." *Id.* Motions under this rule are proper "only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading," not in cases where the pleading merely lacks detail. Fed. R. Civ. P. 12(e) advisory committee's note (1946 amend.).

**B**

This is an insurance dispute stemming from damage to Gulick's vehicle that State Farm insured. It concerns the appropriate calculation of the value of Gulick's totaled vehicle.

Gulick and her husband purchased an automobile insurance policy from State Farm. Doc. 3 at ¶ 8. The relevant policy provision concerning loss settlement provides as follows:[1]

> We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways: (a) Pay the cost to repair the covered vehicle minus any applicable deductible. . . . (b) Pay the actual cash value of the covered vehicle minus any applicable deductible. (1) The owner of the covered vehicle and we must agree upon the *actual cash value* of the covered vehicle.

Doc. 17-1 at 20 (emphasis added).[2] If the parties disagree over the actual cash value, the policy defines a purely voluntary appraisal process that cannot take place unless both parties agree to it. *Id.* The policy does not define the term "actual cash value."

Gulick filed a property damage claim regarding her insured vehicle, and in May 2021, State Farm deemed the vehicle a total loss. Doc. 3 at ¶¶ 10–12. State Farm elected to pay Gulick the actual cash value of the vehicle. *Id.* at ¶ 13. State Farm followed a routine "total loss settlement process" in which it obtained a "Market-Driven Valuation" report from an outside vendor, Audatex. *Id.* at ¶¶ 14–15. Audatex's report collected the prices of four comparable vehicles advertised for sale online within a relevant market area. *Id.* at ¶ 18; Doc. 3-1 at 6. Audatex then reduced each comparable vehicle's asking price by a "typical negotiation adjustment." Doc. 3 at ¶ 18; Doc. 3-1 at 7. The report for Gulick's vehicle determined that the "Total Condition Adjusted

---

[1] Gulick did not attach a copy of the policy or directly cite its provisions, but State Farm attached it as an exhibit to its memorandum in support of its motion to dismiss, asking that its contents be considered when resolving this motion. *See* Doc. 17 at 4, 7–8. It will be considered because its language is referenced in the Amended Complaint, it is central to Gulick's claims, and Gulick has not objected to it. *See Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties to no dispute the document['s] authenticity."); *see also Coonce v. Auto. Club of Am.,* No. CIV-17-279, 2017 WL 6347165, at *1 (E.D. Okla. Dec. 12, 2017) (considering a defendant-filed insurance policy on a motion to dismiss), *aff'd sub nom. Coonce v. CSAA Fire & Cas. Ins. Co.,* 748 F. App'x 782 (10th Cir. 2018).

[2] All references to the parties' briefs and exhibits are to the page numbers assigned by CM/ECF.

3

Market Value" was $16,816. Doc. 3-1 at 4. This figure was $882.75 less than it would have been had the typical negotiation adjustment not been applied. Doc. 3 at ¶ 25. State Farm adopted the report's market value figure as Gulick's total loss claim and paid her that amount. *Id.* at ¶¶ 16–17.

Gulick's Amended Complaint, filed on behalf of herself and all those similarly situated, contends that this methodology violates the parties' agreement. Doc. 3 at ¶ 24. Gulick alleges that State Farm's reliance on Audatex's figure breached its obligation to pay the vehicle's actual cash value. *Id.* at ¶ 36. Essential to that claim, Gulick alleges that State Farm was required to consider her vehicle's fair market value when determining the actual cash value. *Id.* at ¶ 35. Gulick then alleges that the nearly five percent deduction flowing from the negotiation adjustment did not accurately reflect the fair market value of her vehicle because negotiation adjustments "do not accurately reflect market realities" and are "contrary to customary automobile dealer practices and inventory management." *Id.* at ¶¶ 18, 20. She reasons that "a negotiated price discount would be highly atypical" because used cars are priced "to market to reflect the intense competition" arising from increased price transparency on the internet. *Id.* at ¶ 20. She further identifies each of the comparable vehicle prices in Audatex's report as taken from online listings. *Id.* at ¶ 20; Doc. 3-1 at 6. So, because the adjusted total fell below fair market value, Gulick alleges that State Farm breached its promise to pay the actual cash value. Doc. 3 at ¶ 25; *see also id.* at ¶¶ 22–23 (recognizing that a competitor of Audatex's does not use this adjustment and that State Farm does not utilize it in other states).

Based on this conduct, Gulick brings two claims. First, she alleges that State Farm breached the insurance contract by using the typical negotiation adjustment to pay her an amount below the actual cash value of her vehicle. Doc. 3 at ¶¶ 35–39. Second, Gulick seeks a declaratory judgment against State Farm to clarify the parties' rights and liabilities under the insurance contract *Id.* at ¶ 41.

State Farm moves to dismiss both claims for failure to state a claim. Doc. 16. It argues that Gulick failed to identify a provision of the policy that was plausibly breached. Doc. 17 at 6. Alternatively, State Farm seeks an order requiring Gulick to amend her complaint with a more definite statement as to what provision was breached and how. *Id.* at 8. As to the declaratory judgment claim, State Farm argues the claim is superfluous in light of Gulick's breach of contract count. *Id.* at 9. State Farm also asserts that Gulick lacks Article III standing to bring a declaratory judgment claim because the injury (the lesser insurance

payout) would be remedied through the breach of contract claim, and that the likelihood of future injury from a total loss of her vehicle is too remote to confer standing. *Id.* at 9–11.

## II

State Farm's motion to dismiss is denied. Gulick alleges a plausible breach of contract claim and has standing to bring her declaratory action. And State Farm does not show why Gulick's declaratory action, which is substantially similar to her breach claim, should be dismissed as duplicative.

## A

State Farm moves to dismiss Gulick's breach of contract claim on the grounds that Gulick failed to identify the particular policy provision that it breached or how the provision was breached. Doc. 17 at 6–8. Its motion is denied on the breach of contract claim.

Kansas law governs the parties' dispute.[3] In Kansas, a breach of contract claim requires the existence of a contract between the parties, adequate consideration to support the contract, the plaintiff's performance or willingness to perform the contract, the defendant's breach of the contract, and damages to the plaintiff as a result of the breach. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). As Gulick notes, the implied duty of good faith and fair dealing is "part of every contract . . . and any violation of that duty is a breach of contract." *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996), *aff'd* 145 F.3d 1347 (10th Cir. 1998). "[I]n order to prevail on an implied duty of good faith and fair dealing" in Kansas, a plaintiff must plead a cause of action for breach of contract and must point to a contract term that the "defendant allegedly violated for failing to abide by the good faith and spirit of that term." *Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006).

The interpretation of insurance contracts presents a pure question of law. *See First Fin. Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515, 519 (1998); *Fed. Land Bank of Wichita v. Krug*, 253 Kan. 307, 856 P.2d 111,

---

[3] The parties agree that Kansas law governs. Doc. 17 at 6; Doc. 20 at 11. A federal court sitting in diversity must "apply the substantive law of the forum state." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). That law arises from state statute and decisions of a state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

114 (1993). "[T]he primary rule in interpreting written contracts is to ascertain the intent of the parties" based on the plain, general, and common meaning of the words they used within the contract's four corners. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1186–87 (10th Cir. 2018) (applying Kansas law). "As a general rule, if the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction." *Godfrey v. Chandley*, 811 P.2d 1248, 1250–51 (Kan. 1991) (citing *In re Living Tr. of Huxtable*, 757 P.2d 1262, 1266 (Kan. 1988)). But "[w]here the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983) (quoting *Mah v. U.S. Fire Ins.*, 545 P.2d 366, 369 (1976)). To be ambiguous, a contract "must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.* (citation omitted).

State Farm argues first that dismissal is proper because Gulick has not adequately identified the specific provision of the policy that was breached. Doc. 17 at 6–7. That argument fails. While the Amended Complaint does not specify by page and paragraph number the policy provision at issue, it is not hard to discern from the allegations. As noted, the parties' contract—that State Farm drafted—permits State Farm to "[p]ay the actual cash value of the covered vehicle minus any applicable deductible" when settling a loss, which State Farm opted to do here. Doc. 17 at 4. The Amended Complaint describes how State Farm's conduct violated that provision and the extent of damages that Gulick suffered as a result. *See* Doc. 3 at ¶ 19 ("The use of the Typical Negotiation Adjustment . . . result[s] in State Farm paying Plaintiff less than the actual cash value of her total loss vehicle that [s]he was entitled to by contract."); *see also id.* at ¶¶ 14-25 (describing the basis of her claim).

State Farm's contrary authority is distinguishable. In *Mendy v. AAA Insurance*, the plaintiff brought a breach of good faith and fair dealing claim without alleging a breach of a contractual term at all. No. 17-2322, 2017 WL 4422648, at *9 (D. Kan. Oct. 5, 2017). In *Moore v. The Climate Corporation*, the plaintiff alleged only a general breach of the policy without indicating a specific term at all. No. 15-4916, 2016 WL 4527991, at *5 (D. Kan. Aug. 30, 2016). In *Willis v. Department Store National Bank*, there was no contractual promise at all that would support a breach claim. 613 F. App'x 755, 757 (10th Cir. 2015). And in *Knowles v. TD Ameritrade Holding Corporation*, the plaintiff based a breach claim on "vague and conclusory allegations" that the defendant failed "to perform the contract with care, skill, reasonable expediency, and

faithfulness." 2 F.4th 751, 757 (8th Cir. 2021). In each case, the plaintiff failed to identify, with reasonable clarity, the promise made and broken. Gulick does so here.

State Farm's second argument is that Gulick failed to adequately allege a breach of that provision. Doc. 17 at 6–7. It contends that alleging failures to comply with "market realities," "automobile dealer practices," and "generally-recognized and acceptable methodologies" without explaining what those things are is insufficient to establish a breach of the policy provision. *Id.* at 7. That argument also fails because, as noted, Gulick connects the dots by describing the methodology used and how that process violates the contract.

State Farm similarly argues that it is not clear from the pleadings that its alleged conduct, even if true, constitutes a breach of their promise to pay "actual cash value" because that term is not defined and there is nothing categorically wrong with applying negotiation adjustments. Doc. 21 at 2–3 (citing *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 423 (5th Cir. 2004). Without this definition, the argument goes, Gulick cannot demonstrate that State Farm's loss settlement methodology violates the contract. Doc. 21 at 3–6.

That argument hurts—not helps—State Farm. State Farm appears to argue that the absence of a definition for actual cash value insulates its valuation method from a breach claim. In other words, without an express definition of the phrase "actual cash value," Gulick's construction cannot prevail. But contractual vagaries do not work in State Farm's favor. "Where an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer." *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 137 P.3d 486, 495 (citation omitted). Gulick construes "actual cash value" to mean "fair market value." Doc. 3 at ¶ 35. That construction is a permissible one; in the absence of an express formula to determine actual cash value, courts often construe that term to mean the covered property's fair market value. 12 Steven Plitt et al., *Couch on Insurance* § 175:24 (3d ed. 2023). And where, as here, there are competing constructions of "actual cash value" that cannot be resolved by the text of the policy, Gulick's construction is sufficient to state a plausible claim. *See Am. Media, Inc.*, 658 P.2d at 1018.

Gulick's claim is plausible under her construction. As she points out, other courts have found that negotiation adjustments similar to State Farm's render valuations below fair market value and claims attacking those adjustments plausibly allege a breach of the insurer's promise to pay actual cash value. Doc. 20 at 14–16 (citing, for example,

*Smith v. S. Farm Bureau Cas. Ins.*, 18 F.4th 976, 981 (8th Cir. 2021)); *see also Mackensen v. Progressive Direct Ins.*, No. 22-2390, 2023 WL 2474671, at *3 (D. Kan. Mar. 13, 2023) (denying dismissal of breach claim where plaintiff alleged that insurer's loss settlement methodology paid out less than actual cash value). State Farm contends that those cases are distinguishable because, unlike here, fair market value was expressly incorporated into the definition of actual cash value. Doc. 21 at 5–6; *Smith*, 18 F.4th at 978 ("[A]ctual cash value will include consideration of fair market value, age, and condition of the item in question at the time of loss or damage."); Class Action Complaint, *Mackensen v. Progressive Direct Ins.*, No. 22-2390 (D. Kan. Mar. 13, 2023), ECF No. 1-1 at 28 ("The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs."). That is a distinction without a difference because the undefined term here is open to multiple constructions, one of which (as State Farm acknowledges) is that actual cash value means fair market value. *See* Doc. 17 at 2 (recognizing that actual cash value is also commonly referred to as fair market value). And as *Smith* reasoned, a negotiation adjustment that does not reflect the way market participants price and sell vehicles produces an "artificially lower value" than fair market value and thus breaches an insurer's promise to pay actual cash value. 18 F.4th at 980–81.

Gulick has a plausible claim for the same reasons found in *Smith*. She alleges that State Farm paid her less than the fair market value of her vehicle—a valid construction of actual cash value—when it relied on an outdated negotiation adjustment that does not accurately reflect the sales practices of modern car markets. Accepting the facts of the Amended Complaint, State Farm thus paid her "an artificially lower value" than the contract required, breaching its promise to pay the actual cash value of her vehicle. *Smith*, 18 F.4th at 981.

**B**

State Farm also moves to dismiss Gulick's declaratory judgment claim for lack of standing and because it is duplicative of the breach claim. Doc. 17 at 9–11. Neither argument is persuasive.

**1.** The Declaratory Judgment Act "is remedial and does not itself confer jurisdiction on federal courts." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 946 (10th Cir. 2003) (citing *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002)). Instead, the Act limits jurisdiction to "case[s] of actual controversy," which requires the party invoking federal jurisdiction to demonstrate, among other things, that he or she has standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Standing must be demonstrated for every claim a party raises. *Id.* at 2208 (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)). To establish standing, Gulick must show that she has suffered an injury in fact that is fairly traceable to State Farm and that can be or is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing, *Lujan*, 504 U.S. at 560). A future injury for standing purposes must be "real" and not "abstract." *Spokeo*, 578 U.S. at 340.

State Farm agrees that Gulick has alleged a past injury, but it argues that she does not have standing to bring a declaratory action because she cannot also show a likely future injury that would justify prospective relief. Doc. 17 at 10 (citing *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)). But whether Gulick is likely to be injured in the future is irrelevant here—declaratory relief can be treated as retrospective relief when it is tied to monetary damages. *See Collins v. Daniels*, 916 F.3d 1302, 1314–1315 (10th Cir. 2019) (finding standing to seek declaratory relief associated with past damages while finding no standing for injunctive relief because of no risk of future injury); *Lippoldt v. Cole*, 468 F.3d 1204, 1217–18 (10th Cir. 2006) (same). State Farm does not contest that Gulick has standing to bring her breach claim for damages. And that concrete injury, traceable to State Farm's alleged conduct, is equally redressable by a claim for breach or a declaratory action.

Each of State Farm's contrary citations is factually inapposite. Doc. 17 at 10–11 (first citing *Rector*, 348 F.3d at 946, and then citing *Mack v. USAA Cas. Ins. Co.*, 944 F.3d 1353, 1358 (11th Cir. 2021)). In *Rector*, the Tenth Circuit held that two plaintiffs did not have standing to bring declaratory actions challenging the constitutionality of the city's parking ticket regime because the chance they would receive tickets in the future was only an "abstract possibility." 348 F.3d at 946. But key to that holding was the court's recognition that neither plaintiff had a *present* injury to support standing. *Id.* at 945 ("[Plaintiff] does not have standing to bring this suit . . . because her injury, the payment of the fine, is 'fairly traceable' not to the allegedly defective notice but to her lack of any legal defense to the parking ticket.").

So too with *Mack*. On similar facts to those here, an insured sought a declaratory judgment to clarify that his policy entitled him to license and title transfer fees in addition to the actual cash value and taxes for his totaled vehicle. *Mack*, 994 F.3d at 1355. But one difference is critical: all the relief he sought was prospective because Mack and his insurer had "reached a settlement as to the title and license fee claims, thereby mooting the only damages claim." *Id.* Considering solely prospective relief, the court held that the possibility that Mack may total

9

his car again in the future was "too contingent a 'substantial likelihood' of future injury" to confer standing to bring a declaratory action. *Id.* at 1357 (citation omitted).

Unlike in *Rector* and *Mack*, Gulick has alleged a present injury that confers standing to seek declaratory relief. She asserts that State Farm's valuation practices have deprived her of money she is owed under the policy. Her alleged financial injury is concrete, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017), traceable to State Farm's interpretation of the terms of the policy, and redressable by a declaration concerning the rights of the parties under the policy, *Spokeo*, 578 U.S. at 338. Gulick thus has standing to bring her declaratory action.

**2.** State Farm next argues that Gulick's declaratory action should be dismissed because it is duplicative of her breach claim. Doc. 17 at 9. But the Declaratory Judgment Act and the Federal Rules of Civil Procedure permit a declaratory action to proceed despite the availability of similar relief. 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). And elsewhere, the Rules permit plaintiffs to plead alternative claims. Fed. R. Civ. P. 8(d)(2). These rules do not prohibit any party from bringing a claim for breach alongside a similar claim for declaratory judgment.

As State Farm notes, federal courts may dismiss declaratory actions as duplicative of claims for breach. Doc. 17 at 9 (first citing *Burton v. GEICO Cas. Co.*, No. 20-cv-00360, 2021 WL 3725678, at *6 (E.D. Mo. Aug. 23, 2021), then citing *Golf Club, L.L.C. v. Am. Golf Corp.*, No. CIV-16-946 2017 WL 1655259, at *2 (W.D. Okla. May 2, 2017), and then citing *U.S. Aviation Underwriters, Inc. v. Dassault Aviation*, 505 F. Supp. 2d 1252, 1259 n.1 (D. Wyo. 2007)). Those courts exercised their discretion in determining whether a declaratory action was appropriate in those cases. *See, e.g.*, *Golf Club*, 2017 WL 3725678, at *2 (employing the factors in *State Farm Fire Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) to guide its discretion as to "whether to entertain a separate declaratory judgment"). Yet other courts, exercising that same discretion, have reached a contrary conclusion. *Lenexa Hotel, LP v. Holiday Hosp. Franchising, Inc.*, No. 12-2775, 2013 WL 4736245, at *7 (D. Kan. Sept. 3, 2013) (permitting related claims for breach and declaratory judgment to proceed).

State Farm fails to establish *why* Gulick's claim should be dismissed here. It appears to argue (without authority or any persuasive reasoning) that such duplicative claims should be dismissed categorically, . Doc. 21 at 9. Neither the Declaratory Judgment Act nor the federal rules prohibit Gulick from pleading her claims for breach and declaratory judgment together, and State Farm does not otherwise make a compelling argument why the declaratory action should be dismissed at this stage.

III

For the above reasons, State Farm's Motion to Dismiss, Doc. 16, is DENIED.

It is so ordered.


Date: July 3, 2023                           s/ Toby Crouse
                                             Toby Crouse
                                             United States District Judge